UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN AND KIMBERLY ALONSO,

        Plaintiffs,

v.

HURON VALLEY AMBULANCE,

        Defendant.

_____/

Case No. 08-14330

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR FOR
SUMMARY JUDGMENT [7]**

Plaintiffs' complaint alleges numerous state and federal claims arising out of their

employment with Defendant Huron Valley Ambulance ("HVA").  Plaintiff Kimberly Alonso

is currently employed by Defendant HVA, and Plaintiff Alan Alonso was formerly employed

by HVA.

Plaintiff Alan alleges that Defendant HVA (1) discriminated against and wrongfully

discharged him because he is a member of Michigan's Army National Guard in violation

of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38

U.S.C. § 4323, and Michigan's Military Leaves; Reemployment Protection Act, Mich. Comp.

Laws Ann. § 32.271 (Compl., Counts IV, V); (2) retaliated against him because he filed a

complaint with the Michigan Occupational Safety and Health Administration ("MIOSHA")

in violation of Michigan's public policy (Compl., Count VI); (3) retaliated against him for filing

an EEOC complaint after being demoted on July 15, 2007 "an activity protected under the

state and federal statutes"[1] (Compl. ¶¶ 38-41, Count II); and (4) caused him to suffer humiliation and emotional distress in violation of Michigan tort law by disclosing facts about his drug test results, medical condition, and reason for termination (Compl. Count VIII).

Plaintiff Kimberly Alonso alleges that Defendant HVA (1) violated Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws Ann. § 37.2101, et seq., by subjecting her to a hostile work environment and disparate treatment because of her sex (Compl., ¶¶ 6-13, 17-21, 45-47, Count I); (2) violated ELCRA and Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against her for filing an EEOC complaint (Compl., Count II); (3) violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., by demoting her, threatening to replace her, not reinstating her to her field training officer position, and retaliating against her for taking FMLA leave (Compl., Count III); and (4) caused her to suffer emotional distress and humiliation by obtaining information about Plaintiff Kimberly's medical condition and hospital admission and disclosing that information to her co-workers in violation of Michigan tort law (Compl., Counts VII and VIII).

This matter comes before the Court on Defendant HVA's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); or, in the alternative, for summary judgment pursuant to Rule 56(c). For the reasons stated below, Defendant's motion is GRANTED. Plaintiff Alan Alonso's claims are DISMISSED WITH PREJUDICE. Because Plaintiff Kimberly Alonso has failed to exhaust the internal grievance procedures

---

[1]Plaintiffs' Complaint does not articulate what statute his claim arises under, and their Response fails to address Plaintiff Alan Alonso's claim asserted in Count II of the Complaint.

2

as required under her employment agreement with Defendant HVA, her claims asserted against HVA in this lawsuit are DISMISSED WITHOUT PREJUDICE.

## I.  Facts

Defendant HVA is a non-profit, community-owned organization based in Ann Arbor, Michigan.  It provides critical ambulance and educational assistance to the communities it serves.  Today, HVA serves all or part of eight counties in south-east and south-central Michigan.

### A.  Employment Application, Manual, Policies and Procedures

In 2005, Defendant HVA interviewed Plaintiffs, along with others who were interested in working as paramedics for HVA in Monroe County.  On July 4, 2005, Plaintiff Alan signed an Employment Application, and Plaintiff Kimberly signed one on July 8, 2005.  (Def.'s Exs. A, B.)  On the last page of the Applications, in an area blocked off and preceded with the words (in all caps and bolded) "**PLEASE READ THE FOLLOWING BEFORE SIGNING**," there is an exclusive remedy provision and a provision shortening the statute of limitation on all employment-related claims to six months.  (*Id.* at 5.)  The exclusive remedy provision provides that:

> Any dispute arising out of or in connection with any aspect of my employment by the Company, or termination thereof, including by way of example but not limitation, disputes concerning alleged civil rights violations, breach of contract or tort, <u>shall be exclusively subject to review by the Grievance Review Board. Any decision of the Review Board shall be binding to both parties, and enforceable in the circuit court.</u>

(*Id.* (emphasis added).)  The shortened statute of limitations provision provides that:

> I further recognize that if employed by the Company, I agree, in partial consideration for my employment, that <u>I shall not commence any action or other legal proceeding relating to my employment</u> or the termination thereof <u>more than</u>

3

> six months after the termination of such employment and agree to waive any
> statute of limitations to the contrary.

(*Id.* (emphasis added).)  Immediately preceding Plaintiffs' signatures and handwritten date,

there is a paragraph acknowledging that the signer has "read the above statements" and

understands them.  (*Id.*)

In late July or early August 2005, HVA hired both Plaintiffs as a part-time Paramedic

I.  Shortly thereafter, in connection with HVA's newly assumed Monroe County operations,

Plaintiffs each became a full-time Paramedic I.

In conjunction with their employment, Plaintiffs were given HVA's Operations Policies

and Procedure's Manual that explains HVA's four-step grievance policy:

> Your supervisor and HVA have a continuing goal of maintaining a work
> environment where problems and misunderstandings concerning your work will
> be minimal.  When an occasion does arise where you believe a problem or
> misunderstanding has developed, explore the following steps in the prescribed
> order.  This way, you can communicate the exact nature of the problem or
> misunderstanding so that it may be appropriately resolved.  Your use of the
> Problem Solving Procedure as outlined below will not prejudice or damage your
> continued employment prospects, or conditions of employment at HVA.  You can
> also contact Human Resources or the company's Compliance Officer to discuss
> your situation.
>
> **Step 1**
>
> Discuss the problem with your immediate supervisor.
>
> **Step 2**
>
> If your immediate supervisor is not head of the department and you are not
> satisfied with the discussion with him or her, you have the right to talk the matter
> over with your Department Vice President.
>
> **Step 3**
>
> If you are not satisfied with the progress of your complaint, or if there is a valid
> reason for omitting steps 1 and 2, you have the right to discuss the problem with

the President and C.E.O.  He or she will discuss the problem with you, and help you resolve the matter.

**Step 4**

If you are not satisfied at the conclusion of Step 3, and have completed the 180-day introductory period, you may request that the matter be heard before a Grievance Review Board (GRB).  The GRB will hear both sides of the problem and report their findings and decision.  <u>The Board's decision will be final and binding on all parties</u>.

The Grievance Review Board will consist of two representatives chosen by the employee (a line level employee and a supervisor or manager), two representatives chosen by the President and C.E.O. (one a line level employee and one a manager or supervisor) and the fifth individual will be chosen mutually by the employee and President & C.E.O.  Representatives may not be a relative or spouse of the employee.

A request for the GRB hearing of a problem will not prejudice the good standing of any employee.

**Timeliness**

Following review of your grievance with your immediate supervisor, each additional step must be requested in writing within seven (7) calendar days. Step 4 (GRB) must be requested in writing to the President.

(Def.'s Ex. D (emphasis added).)  The employee is also advised to see "Grievance Review Board Procedures - Administrative Policy No. 415."  (*Id.*)

Administrative Policy No. 415 elaborates on the Grievance Review Board Procedures. Under "Policy," the employee is reminded that "[t]he Grievance Review Board's decision will be <u>final and binding on both the employee and the company</u>."  (Def.'s Ex. C (emphasis added).)  Under "Procedure," it is explained that a hearing before the Grievance Review Board is the aggrieved employee's exclusive remedy for employment-related claims.

1.   As the final step of any employee grievance relating to any issue of promotion, demotion, discipline, layoff, recall, termination and/or constructive termination from employment, an aggrieved employee may request a hearing before a Grievance Review Board.  Such a hearing before a Grievance Review

Board <u>will be the exclusive remedy available to an aggrieved employee</u>, whenever the employee's grievance relates in any way to such topics. <u>This procedure shall apply to disputes involving any and all legal claims or theories, including but not limited to claims for defamation, wrongful discharge, breach of contract, negligence, and other tort actions; whistle blower retaliation; or discrimination, harassment and/or retaliation on account of age, sex, sexual orientation, race, color, religion, marital status, handicap, height, weight, national origin or any other classification recognized by law.</u>

(*Id.* at 1 (emphasis added).)

This section also explains how the members of the Grievance Review Board ("GRB") are selected, procedures before the hearing takes place, how the hearing is to be conducted, how a decision is reached, and that the decision is final and binding on both the employee and the company.

> 5.  The aggrieved employee shall select two representatives to sit on the GRB, one of who shall be a line employee and one who is a Supervisor or Manager. Management shall select two representatives to sit on the GRB, one of who shall be a line employee and one who is a Supervisor or Manager. The employee and the President and C.E.O. shall mutually select a fifth individual. The GRB representative shall select the Chair of the review board at the beginning of the hearing. Representatives may not be a relative or spouse of the aggrieved employee. *The Chair will be responsible for maintaining order during the hearing and ensuring that the proceedings are in accordance with this policy and the Board's decision is in accordance with the grievance.* The Department Vice President (or designee) and <u>the aggrieved employee will be present during all testimony</u>. The Department Vice President (or designee) will also explain why the actions were taken.

> 6.  A list of witnesses may also be provided by each party, which must be forwarded to the Human Resources Manager at least five (5) business days prior to the initial scheduled GRB meeting. The Human Resources Manager will provide copies of both witness lists to each party. <u>Each party will have the opportunity to present evidence and arguments, and have the opportunity to reasonably question the witnesses.</u>

> 7.  All members of the GRB should come to the hearing with an open mind, and without preconceived conclusions. The job of the GRB is to determine a conclusion of the matter based on information learned at the hearing. The conclusion should reflect fairness to the employee and company, and where relevant, to our patients and the communities we serve.

8.  The Human Resources Manager (or designee) will take minutes and record the proceedings, but will not be present during the deliberations.   The deliberations by the GRB shall not be recorded.  However, <u>the findings and final decision of the GRB shall be read into an audio recording device.</u>  Management shall maintain the tape, for a minimum of three years.  <u>Any action taken by the GRB will also be</u> <u>written and certified</u> by the Chair <u>on forms provided by the Human Resources Manager</u>.

Procedure - During the GRB

The Human Resources Manager will assemble and distribute a packet of information at the beginning of the GRB for the committee to review:

.   List of the work rules that have been violated
.   Copies of the disciplinary action and performance evaluation given (if applicable)
.   The written answer provided to the aggrieved employee by the President and C.E.O. (Step 3)
.   The specific grievance of the employee and the remedy that the employee is asking the GRB to consider
.   Any other relevant information pertaining to the actions given.

Both the involved employee and management will present their side  of the situation, in the following order:

.   Aggrieved employee
.   Witnesses called by the aggrieved employee
.   Management (by the Vice President for the Department or designee)
.   Witnesses on behalf of Management
.   President and CEO comments about the case
.   Aggrieved employee rebuttal
.   Management rebuttal

Each party will have the right to present evidence and arguments, and each party will have the opportunity to reasonably question witnesses that have been identified on the witness list.  Any written information or copies distributed during the hearing will be collected and destroyed by the Administrative Assistant or Human Resources Manager.

Any evidence presented must be available for management and the aggrieved employee to review.  Relevant information within an employee's personnel file may be presented as evidence.

All witnesses shall be sequestered from the hearing.  The aggrieved employee and one representative from Management (who is not on the Board) may stay

7

through the entire testimony period.  The employee may not request others to attend and should be aware that his or her appointees to the GRB may act as advocates for *either side*.

Once both sides have been presented, all persons not on the GRB shall leave the room and the GRB shall deliberate.  *The final decision of the GRB must be a majority decision; a unanimous decision is not necessary*.  The GRB representatives shall determine if the voting procedure is by open or secret ballot.  The Chair of the GRB shall count the votes and put the findings and decision in writing.

Any member of the committee may request that the GRB consult with the President and C.E.O. at any time – including during the deliberation process.  If this consultation is requested during the testimony period of the GRB hearing, all participants other than the GRB and the President and C.E.O. shall be excused from the room.

The GRB shall put its findings and decisions in writing.  Copies shall be provided both to the involved employee and to Management.   <u>As prescribed in the Employee Handbook, the GRB's decision shall be final and binding on both the employee and the organization</u>.

<u>Important</u>:  A request for a GRB hearing will <u>NOT</u> prejudice the good standing of the employee.

(*Id.* at 2-3 (italics in original; underlining in all but last sentence added).)

After being hired, Plaintiffs attended an orientation.  Each acknowledged that they had received and understood HVA's employment policies and procedures manual by their signature on a document titled "Record of Receipt" and "Statement of Understanding." Immediately above their signature, this document stated:

I, the undersigned, have received a revised copy of the Operations Policies and Procedures Manual for Huron Valley Ambulance, Inc., and understand that I am responsible for adhering to these Policies and Procedures.  I also understand that I am responsible for keeping this manual updated as revisions and/or additions are made.

(Def.'s Ex. E, Plaintiff Alan; Ex. F, Plaintiff Kimberly dated 8/15/05.)

**B.  Plaintiff Alan Alonso**

8

The following facts are relevant to the claims Plaintiff Alan asserts against HVA.

**1.   MIOSHA Complaint**

Plaintiff Alan alleges that, in late April 2007, he made a complaint with MIOSHA regarding the working conditions at HVA, and MIOSHA investigated HVA between April 25 and 27, 2007.  (Compl. ¶¶ 30-31.)  On June 18, 2007, MIOSHA issued two citations to HVA addressing (1) its failure to post a MIOSHA notice, and (2) regarding its recording and reporting of occupational injuries and illnesses.  (*Id.* at ¶ 32.)

**2.   Army National Guard**

Plaintiff Alan joined the Army National Guard on June 6, 2007, and provided his HVA supervisor with the dates that he would be reporting for his required monthly, weekend drill duty.  (Compl. ¶¶ 34-35, 97-98, 105-06.)  Plaintiff Alan was given time off for these dates; but, in February 2008, Defendant HVA questioned certain training dates.  (Def.'s Ex. J, 2/27/08 Corrective Action Report; Ex. I, 2/26/08 Army Nat'l Guard letter.)  In response to HVA's inquiry, Sergeant First Class Kevin R. Sherman, Michigan Army National Guard, confirmed that Plaintiff Alan did not attend drill duty on September 15 and 16, 2007 or on February 9 and 10, 2008.  (Def.'s Ex. I.)

**3.   Plaintiff Alan's Pre-Termination Use of GRB Process**

Plaintiff Alan Alonso used HVA's grievance review process a number of times before his February 2008 termination.

On May 1, 2007, Plaintiff Alan successfully grieved his unsatisfactory performance evaluation of April 5, 2007 that resulted in his demotion to Paramedic I and reassignment of stations.  The GRB issued a decision changing Plaintiff Alan's performance evaluation

from "unsatisfactory" to "below standards." (Def.'s Ex. G, 5/1/07 GRB Panel Decision and Findings.) Moreover, Plaintiff Alan was reinstated as a Paramedic Level II and was required to meet with his supervisor every 30 days for six months for re-evaluation. (*Id.*)

On July 14, 2007, Plaintiff Alan received a verbal warning, a written warning, an unsatisfactory performance evaluation, and a demotion to Paramedic I. In response, he invoked HVA's grievance process, culminating in an August 29, 2007 hearing and decision from the GRB. (Def.'s Ex. G, 7/14/07 email from Alan Alonso.) The GRB's written decisions upheld the written warning, upheld the "unsatisfactory" job performance evaluation dated July 14, 2007, and upheld Plaintiff Alan's demotion to Paramedic I. (Def.'s Ex. G, 8/29/07 GRB Decisions.)

### 4.  Plaintiff Alan Alonso's February 19, 2008 Medical Emergency

On February 19, 2008, while at work, Plaintiff Alan suffered a medical emergency described by his co-worker Paramedic Carrie Hamilton as follows. "Paramedic Alonso was trying to get up and stumbling all over and almost falling. . . . was acting like his blood sugar was low or he was post-ictal. . . . kept trying to exit the quarters and looked like he was going to fall. . . . was agitated the entire time and was diaphoretic." (Pls.' Ex. 11, 2/19/08 Quality Assurance Review.) Plaintiff Alan was taken to the emergency room at Mercy Memorial Hospital, was treated, and released. The diagnosis was "altered mental state" and "possible seizure." (*Id.*, 2/19/08 ER Notes of Dr. Vincent Rimanelli.)

Upon Plaintiff Alan's release from the emergency room, he was taken to HVA's occupational health department for a drug screen test. (Pls.' Ex. 11, 2/19/08 Quality Assurance Review.) Plaintiff Alan's drug screen collected on February 19, 2008 tested positive for hydrocodone, a mind-altering or function-altering substance. (Def.'s Ex. J,

10

2/27/08 Corrective Action Report.)  Plaintiff Alan had a prescription for the drug identified in the drug screen test.  (Pls.' Ex. 5, 3/27/08 email from Plf.)

### 5.  Plaintiff Alan Alonso's Termination, GRB Hearing and Decision

Plaintiff Alan Alonso was terminated on February 27, 2008 for two violating HVA's Code of Conduct by (1) lying about his attendance at Army National Guard drill training on September 15, 2007 and February 9, 2008; and (2) testing positive for a mind-altering or function-altering substance while at work on February 19, 2008.  (Def.'s Ex. I, 2/27/08 Corrective Action Report.)

Plaintiff Alan initiated the grievance review process that same day; February 27, 2008. (Pls.' Ex. 5, 2/27/08 email.)  He scheduled a phone conference with HVA's C.E.O. Dale Berry for March 7, 2008, and subsequently requested a hearing before the GRB.  (Pls.' Ex. 5, 2/29/08 email.)  Plaintiff Alan contested both reasons for his termination, arguing that he was wrongfully terminated because of his military service in the Army National Guard and because he had a prescription for the drug that he tested positive for on February 19, 2008. His requested relief was that he be returned to his prior position. (Pls.' Ex. 5, 3/27/08 email.)

Plaintiff Alan requested and HVA agreed to provide him with his employee file, including the drug screening results and incident reports for February 19, 2008.  HVA also agreed to provide Plaintiff with the necessary forms to obtain his patient care reports for February 19, 2008.  (Pls.' Ex. 5, 2/29/08 and 4/16/08 emails.)

After some negotiations back and forth, Plaintiff Alan and HVA agreed on the five individuals to serve on his GRB and agreed on May 8, 2008 as the GRB hearing date.

11

Witness lists were exchanged on May 5, 2008. (Pls.' Ex. 5, 3/19/08, 3/27/08, 4/16/08, 4/21/08, 4/23/08 and 5/5/08 emails and undated letter from HVA to Plaintiff Alan.)

On May 9, 2008, HVA wrote to Plaintiff Alan informing him that the GRB had determined that his February 27, 2008 termination would be upheld because (1) he had tested positive for a mind-altering and function-altering substance while on duty, and (2) he had taken time off for military duty but had not informed his supervisor that he would not be attending the drill duty and then lied to his supervisor when asked about the circumstances. (Pls.' Ex. 6, 5/9/08 HVA letter.)

### C. Plaintiff Kimberly Alonso

Similar to Plaintiff Alan, Plaintiff Kimberly was hired by HVA in 2005 after completing and signing an identical Employment Application. She also received the same Operations Policies and Procedures Manual as Plaintiff Alan and signed an identical form acknowledging her receipt and understanding of HVA's employment policies. (Def.'s Ex. F, 8/15/05 signed statement.) Unlike Plaintiff Alan, Plaintiff Kimberly Alonso is still employed with HVA.

The following facts are relevant to the claims Plaintiff Kimberly asserts against HVA.

### 1. FMLA - FMLA Retaliation - and FMLA Related Tort Claims

In February 2007, Plaintiff Kimberly informed her supervisor that she was pregnant and requested FMLA leave. Plaintiff Kimberly began her maternity leave on April 17, 2007 and returned to work on November 1, 2007. On December 14, 2007, she was granted an intermittent leave under the FMLA to care for her newborn child. (Compl. ¶¶ 14, 16, 23, 42, 44.)

12

Plaintiff Kimberly alleges that HVA retaliated against her in violation of the FMLA by demoting her without cause on April 5, 2007, by threatening to replace her before she returned from leave, and by not reinstating her to her field training officer position upon her return from FMLA leave. (*Id.* at ¶¶ 17-21, 29, 43, 82-93.) Plaintiff Kimberly further alleges that she suffered humiliation and emotional distress when Defendant HVA released information about her FMLA leave to others. (*Id.* at ¶¶ 15, 17, 25-29, 118-136.)

### 2.  Sex Discrimination and Related Retaliation Claims

Plaintiff Kimberly also alleges that Defendant HVA violated Michigan's ELCRA by subjecting her to a hostile work environment and disparate treatment because of her sex and violated Title VII and Michigan's ELCRA by retaliating against her for filing an EEOC Complaint. (Compl. ¶¶ 6-13, 17-21, 45-47, 70-77, 78-81.) Specifically, she alleges that (1) throughout her employment, she has been subjected to demeaning comments and open hostility by her co-workers because of her sex; (2) she reported the conduct of co-worker Todd McPherson to her supervisors and, despite their claim that they spoke with Todd, the offensive conduct continued; (3) she reported the conduct again to her supervisors; (4) their response was inadequate; and (5) Plaintiff was subsequently disciplined and demoted for a January 6, 2007 incident where Todd was in charge as the reporting paramedic. (*Id.* at ¶¶ 6-13.) She also alleges that similarly situated male co-workers were more favorably treated under similar circumstances. Finally, she alleges that she was retaliated against for reporting discriminatory conduct. (*Id.* at ¶¶ 45-46, 58-67, 73-76, 78-81.)

There is no allegation or evidence that these discrimination and retaliation claims were presented to the GRB.

### 3.  Plaintiff Kimberly's Grievance History

13

On May 1, 2007, Plaintiff Kimberly successfully grieved a number of disciplinary employment actions.  She had received a written warning about a run that occurred on January 10, 2007, that was dismissed by a majority vote of the GRB.  (Def.'s Ex. H, 5/1/07 GRB Decision and Findings.)  She had received a one-day suspension for a run that occurred on March 28, 2007, that was reduced to a written warning.  (*Id.*)  She also received a three-day suspension on April 17, 2007 for making an inappropriate comment to Dr. Couturier while being seen as a patient at Mercy Hospital's emergency room.  That three-day suspension was dismissed by the GRB on May 1, 2007.  (*Id.*)

## II.   Standard of Review

Defendant moves for dismissal based in the alternative on Fed. R. Civ. P. 12(b)(1), Rule 12(b)(6) and Rule 56.  Because both parties rely on evidence outside of the pleadings, this Court construes the motion as one for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).  Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A moving party may meet that burden "by 'showing'-that is, pointing out to the district court- that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  When the moving party has met its burden under rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing

14

"all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.   Analysis

This matter comes before the Court on Defendant HVA's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); or, in the alternative, for summary judgment pursuant to Rule 56(c).  As to Plaintiff Alan Alonso, Defendant argues that his military discrimination and tort claims are barred by provisions in his employment contract establishing a Grievance Review Board as the exclusive remedy for all claims arising out of his employment and establishing a six-month limitations period for all employment-related claims.  Defendant further argues that Plaintiff Alan cannot state a claim of retaliation in violation of Michigan's public policy in connection with his MIOSHA complaint.  As to Plaintiff Kimberly Alonso's claims, Defendant argues that these are all barred because she has failed to exhaust the internal grievance procedures as required under her employment agreement with Defendant HVA.

Plaintiffs respond that (1) they did not knowingly and voluntarily agree to (a) an abbreviated limitations period, or (b) to submit all of their employment-related disputes exclusively to the joint employer-employee GRB where the resulting decision would be final and binding; (2) the GRB process did not comport with elementary fairness as defined by the Michigan Supreme Court; and (3) Defendant's motion is premature.  The Court will address this last argument first.

### A.  Defendant's Motion Is Not Premature

Defendant's motion requires this Court to examine Plaintiffs' employment application, employment manuals, and published policies and determine (1) whether Plaintiffs agreed to an abbreviated limitations period and to have the GRB as the exclusive remedy for all their employment-related disputes; and (2) whether the GRB process, as described in those employment documents comport's with Michigan's concept of elementary fairness. Contrary to Plaintiffs' argument at the hearing on this matter, the record evidence is sufficient to answer the first question, and the second question is one of law for the Court. In *Renny v. Port Huron Hospital*, 398 N.W.2d 327 (Mich. 1987), the Michigan Supreme Court observed that "the question whether the grievance procedure afforded plaintiff elementary fairness [is] a question of law which should not [be] submitted to the jury." *Id.* at 329.

Plaintiffs fail to persuade the Court that additional evidence is necessary to render a decision.  In opposing Defendant's motion, each Plaintiff submitted an affidavit for the Court's consideration.  Despite the opportunity to do so, Plaintiff Alan Alonso's affidavit does not refute Sergeant First Class Kevin R. Sherman's claim that Alan did not attend drill duty on September 15, 2007 and February 9, 2008, and fails to refute HVA's claim that Alan lied to his supervisor about his attendance at Army National Guard drill training on those two dates.  (Def.'s Ex. 1, 2/26/08 Army Nat'l Guard letter; Pl.'s Ex. 4, A. Alonso Aff.) Similarly, despite the opportunity to do so, Plaintiff Kimberly Alonso's affidavit fails to refute Defendant HVA's assertion that she has not exhausted the required grievance procedures for the employment-related disputes she raises in this lawsuit.  (Pl.'s Ex. 1, K. Alonso Aff.)

**B   Plaintiffs Knowingly and Voluntary Waived Right to Judicial Forum**

16

The Michigan courts have long recognized that "'[t]he employer can avoid the perils of jury assessment [where the presence of just cause for discharge is disputed] by providing for an alternative method of dispute resolution.'" *Thornsberry v. North Star Steel Co.*, No. 90-CV-73216, 1991 WL 501465, *3 (E.D. Mich. July 22, 1991) (quoting *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880, 897 (Mich. 1980)).   The Michigan Court of Appeals, applying *Toussaint*, has held that "where a fair grievance procedure, set forth in an employee manual, is used to review an employer's decision to discharge an employee, and results in a final and binding decision, summary judgment on a wrongful discharge claim, in favor of the employer, is appropriate." *Id.* (citing *Khalifa v. Henry Ford Hosp.*, 401 N.W.2d 884, 890 (Mich. Ct. App. 1986)).

In *Renny*, the Michigan Supreme Court addressed circumstances similar to those presented here.  An internal grievance process was established by the employer for all employment-related disputes.  The resulting decision was to be final and binding on both parties.  The *Renny* Court held that "where an employee has expressly consented to submit a complaint to a joint employer-employee grievance board established by the employer with the knowledge that the resulting decision is final and binding, the decision shall be final unless the court finds as a matter of law that the procedures used did not comport with elementary fairness." *Renny*, 398 N.W.2d at 329.

Despite Plaintiffs' claims to the contrary, their "knowing" consent to submit their employment-related complaints to HVA's joint employer-employee grievance review board is established  in numerous ways.  For example, they each signed a document acknowledging that they had received and understood HVA's Operations Policies and

17

Procedures Manual and that they were responsible for keeping the manual updated as revisions or additions were made.  (Def.'s Exs. E and F.)  That employee manual describes HVA's four-step grievance policy, and unambiguously states that the GRB's decision at Step 4 "will be final and binding on all parties."  (Def.'s Ex. D.)  It also advises employees to review HVA's "Grievance Review Board Procedures - Administrative Policy No. 415." (*Id.*)  Administrative Policy No. 415 reminds employees that "[t]he Grievance Review Board's decision will be final and binding on both the employee and the company" and explains that a hearing before the GRB is the aggrieved employee's exclusive remedy for employment-related claims.  (Def.'s Ex. C.)

> Such a hearing before a Grievance Review Board will be the exclusive remedy available to an aggrieved employee, whenever the employee's grievance relates in any way to such topics.  This procedure shall apply to disputes involving any and all legal claims or theories, including but not limited to claims for defamation, wrongful discharge, breach of contract, negligence, and other tort actions; whistle blower retaliation; or discrimination, harassment and/or retaliation on account of age, sex, sexual orientation, race, color, religion, marital status, handicap, height, weight, national origin, or any other classification recognized by law.

(*Id.* at 1 (emphasis added).)  Finally, each Plaintiff used the GRB process, often times successfully, in the past.  (Def.'s Exs. G and H.)

Despite the above, Plaintiffs argue that their waiver of the right to a judicial forum was not knowing and voluntary because (1) their employment documents do not expressly state that they are giving up their right to have a jury consider their employment disputes; (2) they could not revoke their consent; and (3) they were never advised to consult with an attorney before consenting to the GRB alternative dispute resolution process.  Plaintiffs' arguments fail for a number of reasons, including their misplaced reliance on their

18

employment application while ignoring their subsequently signed acknowledgment of receipt of HVA's employment manual and their subsequent use of HVA's grievance procedures in the precise manner set out in their employment documents.

This Court considers the following five factors when "determining whether an employee 'knowingly and voluntarily' waived the right" to sue in court: "'(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.'" *Seawright v. Am. Gen. Fin. Servs, Inc.*, 507 F.3d 967, 974 (6th Cir. 2007) (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc)). As shown below, consideration of each of these factors shows that Plaintiffs knowingly and willingly agreed that the decision of HVA's GRB would be final and binding on Plaintiffs and HVA and waived their right to go to court on their employment-related disputes.

First, Plaintiffs here, like the plaintiffs in *Seawright* and *Morrison*, are educated and capable of understanding the terms of their employment agreements. Not only did they understand the alternative dispute resolution terms of their employment agreements, Plaintiffs used them in the precise manner described in those agreements.

Second, despite their claims to the contrary, Plaintiffs had ample time between applying for their jobs and attending orientation to reconsider consenting to HVA's policy of using the GRB as the final and binding decision maker for all employment-related disputes and waiving the right to sue in court. Likewise, they had ample time to consult

with an attorney on this issue.  Facts weighing against Plaintiffs' arguments were recently discussed in a similar case and apply here as well.  "Plaintiff did not request extra time to consider the Employee Agreement or to contact a lawyer.  Moreover, Plaintiff did not indicate to Defendant he did not understand . . . any portion of the Employee Agreement." *Moore v. Ferrellgas, Inc.*, 533 F. Supp.2d 740, 749 (W.D. Mich. 2008).

Third, despite Plaintiffs' claims to the contrary, HVA's employment documents are not required to expressly state that employees are waiving their right to a jury trial.  *Id.* (citing decisions).  *See also Thornsberry*, 1991 WL 501465 at **1, 3 (granting summary judgment for the defendant employer because the plaintiff employee had grieved the termination decision through a procedure described in the employment manual as "final and binding for the employee and the company"); *Khalifa*, 401 N.W.2d at 887-890 (same).  Finally, that Plaintiffs and HVA mutually promised to be bound by the GRB's decisions "is enough to ensure mutuality of obligation and thus constitute consideration."  *Seawright*, 507 F.3d at 974.

Plaintiffs next argue that the GRB's decision as to Plaintiff Alan Alonso is unenforceable because the GRB process is unfair.

## C.  The GRB Procedures Comport With Elementary Fairness

The Michigan Supreme Court's decision in *Renny* governs this fairness issue.[2]  There, the Court observed that it had "recently agreed with the United States Supreme Court that a decision of a joint employer-employee grievance committee should be granted the same deference as that afforded an independent arbiter."  *Renny*, 398 N.W.2d at 337 (citing *Fulghum v. United Parcel Serv., Inc.*, 378 N.W.2d 472 (Mich. 1985)).  It further observed that "[a]n adjudicative determination by either an administrative tribunal or by arbitration may be challenged on procedural grounds."  *Renny*, 398 N.W.2d at 338.  The Court then listed the five essential elements for fair "joint employer-employee grievance committee" proceedings:

1)  Adequate notice to persons who are to be bound by the adjudication;

2)  The right to present evidence and arguments and the fair opportunity to rebut evidence and argument by the opposing argument;

3)  A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status;

4)  A rule specifying the point in the proceeding when a final decision is rendered; and,

5)  Other procedural elements as may be necessary to ensure a means to determine the matter in question.  These will be determined by the complexity of the matter in question, the urgency with which the matter must be resolved and the opportunity of the parties to obtain evidence and formulate legal contentions.

---

[2]Plaintiffs' employment agreements do not contain arbitration clauses.  Accordingly, Plaintiffs' reliance on the discussion in *Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208, 227-230 (Mich. Ct. App. 1999), about "fairness-related requirements on arbitrators" when the parties' employment agreement has an arbitration clause is misplaced.

*Id.* (citing Restatement Judgments, 2d, §§ 83(2) and 84(3)(b)).

Step 4 of HVA's grievance procedure, as evidenced from Plaintiff Alan Alonso's use of that procedure in connection with his termination, comports with the *Renny* standards for elementary fairness.  First, there is no question that Plaintiff Alan had notice of the challenged GRB procedures because it was his email to HVA that invoked them.  (Pls.' Ex. 5, 2/27/08 and 2/29/08 emails.)  Second, Plaintiff Alan was allowed to present evidence, witnesses and arguments and to rebut the evidence, witnesses and arguments raised by HVA.  (Def.'s Ex. C, "Grievance Review Board Procedures - Administrative Policy No. 415.")  Prior to the GRB hearing, Plaintiff Alan requested and HVA provided him with his employee file, drug screen results, incident reports for February 19, 2008, and witness lists were exchanged.  (Pls.' Ex. 5.)  Third, Plaintiff Alan was allowed to formulate the issues he wished the GRB to address at the hearing; i.e., that he was wrongfully terminated (1) because of his commitment to serve in Michigan's Army National Guard, and (2) because he had a prescription for the drug that he tested positive for on February 19, 2008.  He was also allowed to state that his requested relief was to be returned to his prior position.  (Pls.' Ex. 5, 3/27/08 email.)  The issues Plaintiff Alan identified and his requested relief were addressed at the GRB hearing.  He was also informed in writing of the GRB decision and its findings.  (Pls.' Ex. 6, 5/9/08 HVA letter.)  Fourth, the GRB procedures provided for deliberation by the GRB after hearing from the aggrieved employee, his witnesses, HVA management and its witnesses and rebuttal from both.  (Def.'s Ex. C.)  A final decision was provided to Plaintiff Alan one day after the hearing.  (Pls.'s Ex. 6, 5/9/08 HVA letter.)  HVA's grievance procedures also require that the GRB hearing be recorded and that the findings

and final decision of the GRB be read into an audio recording device that is saved for at least three years. The GRB's decision is also written and provided to the aggrieved employee. (Def.'s Ex. C.) Fifth, similar to the grievance process approved by the court in *Thornsberry*, the method for choosing the GRB at issue here "helped to ensure a fair determination" because "[t]wo members were selected by [the employer], two by [plaintiff employee], and one by mutual agreement by plaintiff and defendant [employer]. Such a procedure provided for an equal, if not neutral, . . . review board." 1991 WL 501465 at *5. Also similar to the grievance process approved in *Thornsberry*, Plaintiff Alan was allowed to appear at the hearing, to make arguments, and to question witnesses. Likewise, the GRB's decision "was final and binding upon both parties." *Id.*

Contrary to Plaintiffs' arguments here, fairness does not require that he be represented by counsel at the GRB hearing. Likewise, fairness does not require that he have a neutral arbitrator, a full-range of discovery similar to that available in litigation, and suffer no interruptions when presenting his arguments before the GRB. Similar arguments were rejected in *Khalifa*, 401 N.W.2d at 897-98, and *Thornsberry*, 1991 WL 501465 at * 6 (observing that a grievance board is "not required to act as a court of law would in hearing a wrongful discharge case. . . . Indeed, plaintiff's argument as to law and burdens would, if accepted, replace the 'elementary' concept of the *Renny* fairness requirements with a 'procedural' concept of fairness equivalent to court proceedings.").

Having determined that Plaintiffs' waiver of a judicial forum was knowing and voluntary and that the GRB procedures comport with elementary fairness, the Court now addresses

23

the claims asserted by Plaintiffs Alan and Kimberly Alonso in this litigation, beginning with those of Plaintiff Alan Alonso.

### D. Plaintiff Alan Alonso

#### 1. Claims of Discrimination in violation of USERRA of Michigan's Military Leaves; Reemployment Protection Act

Plaintiff Alan Alonso used the GRB process unsuccessfully to grieve the same claims he asserts in this litigation – that he was wrongfully discharged because of his military service in the Michigan Army National Guard.  The GRB upheld the decision to terminate Plaintiff Alan, finding that he had taken time off for military duty but had not informed his supervisor that he would not be attending the drill duty and then lied to his supervisor when asked about the circumstances.  (Pls.' Ex. 6, 5/9/08 HVA letter.)  Thus, contrary to Plaintiff's USERRA and Michigan's Military Leaves Act claims asserted here, the GRB rejected Plaintiff Alan's argument that he was terminated because he was in the military service.  Rather, it found that he was terminated because he had lied to his supervisor at HVA about his attendance at drill duty on certain dates.  Plaintiff cannot assert statutory discrimination claims in this Court in an effort to relitigate a decision provided by the GRB that is fair, final, and binding.  The GRB had the authority to render a final decision on Plaintiff's discrimination claim.  *See Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 562-63 (6th Cir. 2008) (holding that USERRA claims are arbitrable and need not be submitted to a judicial forum).  Plaintiffs do not provide the Court with persuasive authority to the contrary or otherwise establishing that either of Plaintiff Alan's statutory claims cannot be

24

submitted to a joint employer-employee review board for final resolution.   Accordingly, these claims are dismissed.

### 2. Plaintiff Alan's Remaining Claims Are Time-Barred

Plaintiffs' Complaint was filed on October 14, 2008, and he was terminated on February 27, 2008.[3]  Plaintiff Alan Alonso failed to raise his remaining employment-related claims before the GRB.[4]   They are now time-barred under the six month statute of limitations provision provided in his Employment Application, above his signature, stating that:

> I further recognize that if employed by the Company, I agree, in partial consideration for my employment, that I shall not commence any action or other legal proceeding relating to my employment or the termination thereof more than six months after the termination of such employment and agree to waive any statute of limitations to the contrary.

(Def.'s Ex. A.)

---

[3]The contractual six month statute of limitations began to run on February 27, 2008, when Plaintiff Alan Alonso was terminated; not on May 9, 2008, the date the GRB informed him of their decision to uphold his termination.

[4]Because Plaintiff Alan Alonso failed to grieve these employment-related claims before the GRB, they is no reason to consider his tolling arguments.

Moreover, even if Plaintiff Alan Alonso had raised a claim that he was terminated in retaliation for filing an earlier MIOSHA complaint, that claim would fail.  The relevant MIOSHA provision, Mich. Comp. Laws Ann. § 408.1065, requires the aggrieved employee to file a complaint with the department of labor within 30 days after the violation occurred, the department then investigates and, if a violation is found, "shall order all appropriate relief, including rehiring or reinstatement of an employee to his or her former position with back pay.  § 408.1065(2).   Thus, the exclusive remedy for Plaintiff Alan's MIOSHA retaliation claim is provided in § 408.1065(1)-(2).  Claims of retaliation which fail to comply with these statutory provisions must be dismissed.  *See Ohlsen v. DST Indus., Inc.*, 314 N.W.2d 699, 701 (Mich. Ct. App. 1981).

Absent any statutory provision precluding such waivers, the Michigan and federal courts have consistently enforced contractually shortened statutes of limitations provisions substantially similar to that found in Plaintiff Alan Alonso's Employment Application. The Michigan Supreme Court recently held that "an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy." *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005). The Court overruled earlier precedent to the extent it "abrogate[d] unambiguous contract terms" on the basis of the court's "own independent assessment" of the "reasonableness" of a contractually abbreviated period of limitations. *Id.* at 30-31. *See also Breitenbeck v. Merillat Indus., L.L.C.*, No. 258135, 2006 WL 859421, *2 (Mich. Ct. App. Apr. 4, 2006) (observing, where the plaintiff signed an employment application with an abbreviated limitations period, that "[i]t is a well-established principle that a party signing an agreement is deemed to know its contents and may not claim ignorance to avoid the instrument"); *Peterson v. Art Van Furniture*, No. 233745, 2003 WL 1985262, *5 (Mich. Ct. App. Apr. 29, 2003) (observing that "[a] person who signs a written agreement is presumed to know the nature of the document and understand its contents, and the terms of an employment application constitute part of an employment contract between the employee and the employer.") (internal citations omitted).

In *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 353 (6th Cir. 2004), the Sixth Circuit Court of Appeals considered "whether an employee effectively waived the statutory limitations period by signing an employment application that provided for an abbreviated period of limitations" in a case alleging claims of sex discrimination under Michigan's

26

ELCRA, race discrimination under 42 U.S.C. § 1981, and various state law tort claims. Applying Michigan contract law, the *Thurman* court found the waiver to be enforceable. It observed that, similar to the waiver in Plaintiffs' applications, that the challenged clause "is located in a section with the heading "**READ CAREFULLY BEFORE SIGNING**." *Id.* at 358. The *Thurman* court further observed that the clause is located above the plaintiff's "signature acknowledging that she read and understood the document." *Id.* The same is true of Plaintiffs' Employment Applications here. Finally, the *Thurman* court rejected the plaintiff's claim that waiver was unenforceable because she did not sign it knowingly and voluntarily. *Id.* at 358.

Similar to the plaintiff in *Thurman*, Plaintiff Alan Alonso argues here that his claims in this lawsuit should not be dismissed because he did not sign the waiver of the statutory period of limitations or agree to an abbreviated limitations period knowingly or voluntarily. This Court disagrees. Considering the factors identified in *Seawright*, 507 F.3d at 974, it is this Court's determination that Plaintiff Alan knowingly and willingly agreed to an abbreviated limitations period. First, as shown by his Employment Application, his education and work experience render him capable of understanding this contract term. Second, Plaintiff admits that he submitted his application earlier than most (Resp. at 7, n.1) and thus had more time to reconsider employment at HVA or to consult an attorney before beginning work at HVA. Third, the language of the challenged clause is plain and unambiguous. Finally, there was consideration because HVA promised to review Plaintiff Alan Alonso's application in exchange for his promise to be bound by the abbreviated limitations period. *See Seawright*, 507 F.3d at 974.

27

Having determined that Plaintiff Alan Alonso's claims must be dismissed with prejudice, the Court now turns to Plaintiff Kimberly Alonso's claims.

**E.  Kimberly Alonso's Claims**

This Court has already determined that Plaintiff Kimberly Alonso knowingly and voluntarily agreed to submit all her employment-related disputes to the GRB for a final and binding decision.  She has not done so.  Moreover, she has not provided the Court with any authority showing that her claims cannot be considered by the GRB.  Accordingly, the claims she asserts in this action are hereby dismissed without prejudice.

28

**IV.    Conclusion**

For the above-stated reasons, Defendant's motion is GRANTED.   Plaintiff Alan

Alonso's claims are DISMISSED WITH PREJUDICE, and Plaintiff Kimberly Alonso's claims

are DISMISSED WITHOUT PREJUDICE.


                    s/Nancy G. Edmunds                                
                    Nancy G. Edmunds
                    United States District Judge


Dated:  May 26, 2009


I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on May 26, 2009, by electronic and/or ordinary mail.

                    s/Carol A. Hemeyer                                
                    Case Manager